**246**     NEW YORK PRACTICE REPORTS.

Riker agt. Society of the New York Hospital.

## SUPREME COURT.

John H. Riker, as executor, &c., agt. The Society of the New York Hospital and others.

*Will — Construction of — When not void under the statute against perpetuities.*

In 1862, three sisters, Margaret, Mary and Sarah, were the owners in equal proportions of a large amount of real and personal property called the joint Burr estate. Margaret died in September, 1862, leaving a will by which she devised, on the death of her surviving sister, all her lands to executors until the sale thereof in trust at such times as they might deem for the benefit of the estate. She gave to them the proceeds of her lands and personal estate, not otherwise specifically given, to pay legacies to various charities. Mary, who died in 1865, gave her real and personal estate to her executors after the death of her sister, and the rents, issues and profits of the estate to be sold by them were to be applied to the payment of residuary legacies to charities. The legacies referred to in Margaret's will are made payable within four years from the death of the survivor of the sisters. By a codicil to Mary's will the legacies to charities are directed to be paid within two years from the death of her sister:

*Held*, that these wills are not void under the statute against perpetuities, there being not in either of them any suspension of the absolute power of alienation of the real estate for more than two lives in being at the creation of the estate.

*Special Term, December,* 1883.

*E. Ritzema De Grove* and *John E. Parsons,* for plaintiff.

*Franklin & Clifford A. H. Bartlett,* for next of kin.

*Miller, Peckham & Dixon,* for St. Luke's Hospital.

*Varnum & Harrison,* for Corporation for the Relief of Widows and Children of the Clergymen of the Protestant Episcopal Church in the state of New York.

*Tracy, Olmstead & Tracy,* for American Bible Society.

*T. C. Cronin,* for Burr & Burton Seminary.

*C. D. Adams*, for New York Juvenile Asylum.

*William Venville*, for Association for the Relief of Respectable Aged Indigent Females in the city of New York.

*Gray & Davenport*, for Association for the Benefit of Colored Orphans.

*Platt & Bowers*, for New York Institution for the Blind.

*Lord, Day & Lord*, for Eye and Ear Infirmary.

*De Forest & Weeks*, for Orphan Asylum Society in the city of New York.

*Charles E. Whitehead*, for Children's Aid Society.

*Eugene Smith*, for Prison Association.

*Frederick Wm. Joeckel*, for American Tract Society.

*Frederick de P. Foster*, for Society for Relief of Destitute Children of Seamen.

*De Witt, Lockman & De Witt*, for defendant Samuel Riker, executor, &c., and others.

*Cyrus Lawton*, for defendants Hewlett, Treadwell and Townsend, as executors, &c.

*J. Herrick Henry*, for Protestant Episcopal Society for the Promotion of Evangelical Knowledge.

*Sullivan & Cromwell*, for Nursery and Child's Hospital.

*Wilson M. Powell*, for Society of the New York Hospital.

*John Sherwood*, for New York Dispensary.

*Edmund T. Huerstel*, for defendant Daniel T. Kissam.

*Julian T. Davies* and *James McNamee*, for Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America.

*Hoppin & Talcot,* for Women's Hospital.

*Stanley, Clarke & Smith,* for defendant Sidney Burr, administrator.

MACOMBER, *J.* — This is an action for the construction of the last wills of Margaret Burr and Mary Burr, and for the distribution of the estate under these wills respectively.

The controversy arises mainly between the defendants, who claim to be next of kin of the testatrices and of their sister, Sarah Burr, and the representative of such next of kin on the one hand, and the defendants the several charitable, religious and missionary corporations on the other hand. The individual defendants, bearing the same degree of kinship to Margaret Burr and Mary Burr as they do to Sarah Burr, are not, nevertheless, in any legal sense the next of kin of either Margaret or Mary, for, at the death of Margaret, her only next of kin were the surviving sisters Mary and Sarah, and at the death of Mary, her only surviving next of kin was Sarah. The individual defendants are, however, the next of kin of Sarah Burr, and consequently are interested in having her estate realize as much as may be from the estates of her deceased sisters, and for that reason ought to be heard in the case as though they were in fact the next of kin of the persons whose wills are under consideration.

In the year 1862, these three sisters were the owners in equal proportions of considerable real and personal property, which is commonly referred to as the joint Burr estate. Margaret Burr died on the 24th day of September, 1862, leaving a last will and testament which bears date August 11, 1862. Mary Burr died on July 8, 1865, and Sarah Burr died March 1, 1882.

It is claimed by the next of kin of Sarah Burr that the wills of Margaret and Mary Burr are void under the statute against perpetuities, in that they suspend the power of alienation for more than two lives in being. The material portions of the wills which provoke this opposition to their validity

are in substance these : After giving to her two sisters, or the survivor of them, full power of sale of all real estate, to be exercised at any time, Margaret Burr devised, in the second clause of her will, on the death of the surviving sister, all her lands to her executors. " I give to such executors, after the death of my said sisters, the rents, issues and profits of said lands, until the sale thereof, in trust as aforesaid, which sale may be at public auction or at private sale, in the discretion of the executors, at such times, on such terms and such manner as they shall deem to be for the best benefit of my estate; and I give to them the proceeds of my lands and all my personal estate, not otherwise specifically given, in' order to the payment of the legacies hereinafter expressed."

Mary Burr, by the third article of her will, devised unto her executors "all the residue and remainder of such real and personal estate, after the death of my said sister, and the rents, issues and profits of said real estate, which is to be sold by them as is hereinafter expressed, and the proceeds of which, with the income after her decease, are to be applied in payment of the particular residuary legacies hereinafter given. * * * I direct the sale of the real estate to be made at such times and in such manner as my executors who may act shall deem expedient for the purposes of payment to the legatees as hereinafter expressed."

The legacies referred to giving to charities by the fifth clause of the will are made payable within four years from the death of the survivor of the sisters. By the codicil to Mary Burr's will the legacies to charities were directed to be paid within two years from the death of her sister Sarah.

I do not find in either of these wills any suspension of the absolute power of alienation of the real estate for more than two lives in being at the creation of the estate. Without specially adverting to the numerous cases upon the general subject, I deem it necessary to refer only to the case of *Robert* agt. *Corning* (89 *N. Y.*, 225). At page 235 the court says : " The rule declared in this section (1 *R. S.*, 723, *sec.* 14) con-

stitutes under our statutes the sole basis of an unlawful perpetuity. * * * But the mere creation of a trust does not, *ipso facto*, suspend the power of alienation. It is only suspended by such a trust, where the trust term is created either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust. Where the trustee is empowered to sell the land without restriction as to time the power of alienation is not suspended, although the alienation in fact may be postponed by the non-action of the trustee or in consequence of a discretion reposed in him by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the power of alienation and not at all to the time of its actual exercise; and when a trust for sale and distribution is made without restriction as to time, and the trustees are empowered to receive the rents and profits pending the sale for the benefit of beneficiaries, the fact that the interest of the beneficiaries is alienable by statute during the existence of the trust does not suspend the power of alienation, for the reason that the trustees are persons in being who can at any time convey an absolute fee in possession." The discretion vested in the executors to delay the sale of the real estate, not exceeding three years, was there held not to create a trust term for any period of time, and involved no suspension of the power of alienation.

Under this decision there was not in the case of either of these wills a moment of time when the executors did not have it in their power, acting in accordance with the provisions of the will, to sell and dispose of the real estate and convey a perfect title thereto. The mere fact that they did not sell is of no significance in my judgment. Furthermore, there was an equitable conversion of the real estate into personalty immediately upon the death of the survivor of Margaret's sisters, and in their hands the profits of the real estate received by the executors would go with and be deemed a part of the converted fund. As is held in *Lent* agt. *Howard* (89 *N. Y.*,

169): "If, however, the power of sale operates as an immedi ate conversion of the land into personalty, accompanied with a gift of the proceeds, then, in equity, the intermediate rents and profits go with and are deemed to be a part of the converted fund, and the heir may be compelled to account therefor to the executor and the latter to the beneficiary for so much thereof as is received by him as well as for the proceeds of the sale."

In my judgment the legacies to charities in these wills are not invalid by reason of the directions there given that they should be paid within four years in one will, or within two years in the other, from the death of the survivor of the sisters respectively. As was held in *Gilman* agt. *Reddington* (24 *N. Y.*, 18) a vested legacy payable in three years, or at other periods depending on a life or two lives in being, is legal. The words prescribing the time within which the legacies should be paid are not, in their nature, in the way of any enlargement of the time, but are used by way of restriction. The title of the legatee to the legacy immediately attached upon the death of the testatrix (*Manice* agt. *Manice*, 43 *N. Y.*, 382).

I come now to the question of the validity of the several bequests to the charitable and religious corporations, arising upon the special provisions of their charters. Among all of the defendant corporations I do not find but two which fall within the restrictions made by chapter 319 of the Laws of 1848, by which a bequest to a benevolent, charitable, scientific or missionary society, shall not be valid in any will which shall not have been made at least two months before the death of the testator. Margaret Burr died within the two months after the execution of her will, and it follows, therefore, that any bequest to any religious or charitable societies, which come within the inhibition of this statute are invalid and fall into the residuum of the estate. These are the Children's Aid Society and St. Luke's Hospital, which were organized under that act. The bequests to them, how-

ever, in Mary Burr's will, are not open to this objection. None of the charitable and religious corporations are prohibited from taking any portion of the legacies given to them, by reason of any other part of said act, or under chapter 360 of the Laws of 1860, which prevents the testator, leaving parents, husband, wife or child, from giving beyond a certain amount of his or her property to such institutions; for neither of the testatrices left her surviving a father, or mother, a husband, or child.

No question arises in regard to the existence of the corporation known as the Episcopal Society for the Promotion of Evangelical Knowledge, except the proof as to its organization, which was disposed of at the trial. But it is claimed that the legacies to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America are void because of misnomer. It is shown by the evidence that the Missionary Society of the Protestant Episcopal Church for Foreign Missions, The Board of Missions of Protestant Episcopal Church for Foreign Missions, The Board of the same church for Domestic Missions, The Foreign Missionary Society of the Protestant Episcopal Church of the United States, mentioned in these wills, were all intended to be for the defendant The Domestic Foreign Missionary Society of the Protestant Episcopal Church in the United States of America.

I need not refer to the proof in detail. The object of the testatrices' bounty is here clearly ascertained. The corporation may be designated by its corporate name in the will by which it is usually or popularly called or known, or by the name or description by which it can be distinguished from every other corporation (*Lefevre* agt. *Lefevre*, 59 *N. Y.*, 434; *St. Luke's Hospital* agt. *American Association*, 52 *N. Y.*, 191). And, without going over the same ground as to each of the different corporations mentioned in these wills, where the precise and technical name was not actually used, I refer

Riker agt. Society of the New York Hospital.

to the foregoing decisions to sustain their claims to their legacies respectively.

It is further objected against the validity of the legacies to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States, that in the years 1862 and 1865, it held, and now holds, personal property beyond the limit placed by law. This is not tenable. By its original charter the net income of said society arising from its real estate could not exceed $2,000 annually. By the fourth section the corporation possessed the general powers and were subject to the provisions contained in title 3 of chapter 18 of the first part of the Revised Statutes, so far as the same were applicable. It appears that in 1862, and up to 1865, this society held no real estate. The amount of its personal property is not shown, but I do not understand that there is any limit by statute on the amount of personal property which the society can take, provided its purposes require it.

It is further claimed by the next of kin of Sarah Burr that the legacies to the Society of the New York Hospital are invalid, because, by its charter, it is permitted to take and hold personal estate only when the clear yearly value of its real estate does not exceed five thousand pounds sterling. This charter was granted in the year 1871 by the name of the New York Hospital. In the year 1810 its name was changed to the Society of the New York Hospital. The yearly value of its real estate was originally limited to $25,000. Its charter had been amended from time to time — in the years 1810, 1816, 1828, 1850, 1875 and 1879. By the Laws of 1879, chapter 244, it was permitted to receive, by devise or grant or gift, and to hold and enjoy real and personal estate for the uses and purposes of the corporation, the net yearly income of which should not at any time exceed $500,000.

It also appears in evidence that in the year 1881, its receipts from real estate were upwards of $150,000. It does

not appear, however, that in 1862 or 1865, or prior thereto, or for several years subsequent thereto, the society received any revenue or income from its real estate, and that, consequently, I do not see that any serious question can be made against the validity of these bequests; because, manifestly, their validity depends upon the condition of things at the time that the legacies vested. Against the validity of the legacy to the New York Dispensary, it is claimed by the individual defendants that at the time of the death of Margaret and Mary Burr, respectively, there was no such corporation in existence. It is shown, however, that many years previous to, and at the time of their deaths, there was a corporation known as the Trustees of the New York Dispensary, and that it was a charitable corporation, performing its functions in the city of New York, and was organized in the year 1795. Its charter was amended by the act of May 5, 1869, by which its name was changed to the New York Dispensary. Furthermore, it does not appear that at the time these legacies were given its income was above the sum limited in its original charter.

It is also urged that the defendant the New York Institution for the Blind did not exist at the time these wills went into effect, but that its charter had expired. I find, however, among the papers submitted in the case, and to which I presume the attention of the opposing counsel was called, is an act of the legislature, passed April 15, 1852, containing its charter.

Objection is also made to the bequest to the Society for the Relief of Widows and Small Children, because, first, its charter expired May 1, 1865; and second, that its charter, even though existing, limits the real and personal estate which it may hold to the value of $100,000, and that it appears in evidence that its personal estate amounted to $132,000. By the last clause of its original charter it was enacted that the society should be in full force until the 1st day of March, 1824, and no longer. By chapter 278 of the

Laws of 1825, its charter was revived, and all forfeitures, by reason of the expiration of its original charter, were remitted. By chapter 226 of the Laws of 1845, the society was again revived, and continued in force until the 1st day of May, 1865. By chapter 440 of the Laws of 1862, its real estate was restricted to the value of $100,000. By chapter 66 of the Laws of 1869, it was authorized to take by bequest or otherwise, and to hold real and personal estate to an amount not exceeding $250,000. It did not become subject to the provision of the act of 1848 until after the act of 1869 was passed. The legacies vested immediately upon the death of the testatrices. There is no evidence of the value of the property held by the society at the date of Margaret and Mary Burr's death. It is quite clear to me that if the present value of the property of this society is to be taken into account, the limitation of $250,000 by the act of 1869 should be taken into the account also.

It is also contended that the New York Eye and Ear Dispensary cannot take the bequest given in Margaret Burr's will, because it did not come into existence until 1864, two years after her death. This society was incorporated by special act of the legislature in 1822, under the name of the New York Eye Infirmary, and, in 1864, the name was changed to the New York Eye and Ear Infirmary. It was manifestly the society intended by the will of Margaret Burr.

What has already been said may be applied to the Nursery and Children's Hospital and the Association for the Benefit of Colored Orphans of the City of New York, and to the Corporation for the Relief of Widows and Children of Clergymen, and to St. Luke's Home for Indigent Christian Females, and to the Society for the Relief of Destitute Children of Seamen.

The American Bible Society was organized by special charter by chapter 68 of the Laws of 1841. By the second section of that act the net income of said society arising from its real and personal estate was limited to the sum of $5,000

annually. By chapter 247 of the Laws of 1852, authority was given it to purchase, take and hold and convey real estate even though the net annual income of the society should exceed the amount limited in its charter.

The American Church Missionary Society was chartered by chapter 189 of the Laws of 1861. Its annual income from real estate at one time held, could not by that act exceed the sum of $30,000. As to its personalty, its power to take is not limited.

The Protestant Episcopal Church Missionary Society for the seamen in the city and port of New York was chartered by chapter 147 of the Laws of 1844. By its charter it was lawful for such society to build, purchase, hire, take and hold one or more houses and lots, and the requisite furniture thereof, for the boarding, lodging and entertainment of seamen and boatmen of the city of New York, to an amount not exceeding $100,000, and demise the same. There is no valid claim that this society has exceeded the amount of property which it is capable of holding.

This completes, I believe, the examination of the charters of the several different corporations in respect to their ability to take and hold property by gift, grant, devise or bequest.

The legacies to individual defendants are not disputed, and require no special examination. It follows, therefore, that the legacies to the several charitable, religious and missionary societies mentioned in the wills of Margaret and Mary Burr (excepting those to the Children's Aid Society, St. Luke's Hospital, in Mary Burr's will) are valid, and should be paid by the executors in accordance with the intention of the testatrices, and as particularly directed to be done in my findings of fact and of law.