structed the jury that if the motorman started the car with a sudden jerk while plaintiff was boarding it, and the plaintiff was thereby injured, "the verdict will be for the plaintiff." This virtually was concluding that evidence to that effect established, as matter of law, negligence on the part of the defendant, and plaintiff's freedom from contributory negligence. The law is firmly settled that contributory negligence prevents recovery, and that, upon conflicting inferences, it is a question for the jury.

Upon the other branch of the case the court, in effect, characterized the conduct of the motorman as testified to by the witnesses as negligent. In the recent decision of this court in Fiori v. Metropolitan St. Ry. Co. (October term), 90 N. Y. Supp. 521, such a charge was held to be ground for reversal, and therein the authorities are cited and discussed. Although the objectionable charge in that case went further, and referred to the plaintiff's witnesses as having testified to the acts which were characterized as negligent, it was the characterization that constituted the vice in the charge, since it removed from the jury the right to say whether the acts testified to were or were not negligent.

We think, therefore, that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

(100 App. Div. 29)

## BOWMAN v. DOMESTIC & FOREIGN MISSIONARY SOC. OF PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES et al.

(Supreme Court, Appellate Division, Fourth Department. December 7, 1904.)

1. CONSTRUCTION OF WILL—IDENTITY OF BENEFICIARY—SUFFICIENCY OF EVIDENCE.

Evidence in an action for the construction of a will considered, and held that "the Domestic and Foreign Missionary Society of the Protestant Episcopal church of the United States of America" was intended as the legatee under a bequest to the "Indian missions and domestic missions of the United States."

2. SAME—EXTRINSIC EVIDENCE.

Extrinsic evidence is admissible to show what missionary society was intended as the beneficiary under a bequest of a specified sum "to be divided between Indian missions and domestic missions of the United States."

McLennan, P. J., dissenting.

Appeal from Special Term, Monroe County.

Action by John P. Bowman, executor of the estate of Mary W. Jewett, deceased, against the Domestic & Foreign Missionary Society of the Protestant Episcopal Church in the United States of America and others for the construction of a will. From a judgment for plaintiff (87 N. Y. Supp. 621), and from an order denying a motion to resettle the decision on which the judgment was entered, defendant missionary society appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Davies, Stone & Auerbach and Charles E. Hotchkiss, for appellant.
Timothy J. Nighan, John P. Bowman, Ernest B. Millard, and Del-
bert A. Adams, for respondent.

WILLIAMS, J.   The judgment, so far as appealed from, and the
order should be reversed and a new trial directed, with costs to the
appellant against the estate, to abide event upon questions of law only,
the facts having been examined and no errors found therein.   The ac-
tion was to procure a construction of the will of deceased.   The clause
which is under consideration on this appeal is as follows:

"Ninth,—I give, devise and bequeath the sum of Two thousand dollars to
be equally divided between the Indian Missions and Domestic Missions of the
United States, in Memoriam to the late Mary A. Archer."

The plaintiff claims, and the trial court has held, "that this provision
is void for indefiniteness, and the amount thereof must fall back into
the residue of the estate," and such is the provision of the judgment ap-
pealed from.   The appeal is taken by "the Domestic and Foreign Mis-
sionary Society of the Protestant Episcopal Church in the United States
of America," a corporation which was made a party to the action be-
cause it made claim to this legacy under this clause of the will.

It must be conceded that the testatrix intended by this clause to ap-
propriate $2,000 to Indian and domestic missionary work as conducted
within the Protestant Episcopal Church of the United States.   The evi-
dence bearing upon this question establishes this beyond doubt.   She
resided at and prior to her death in Clarkson, Monroe county, N. Y.,
had never been married, and was survived by no immediate relatives.
The will was in her own handwriting.   All her life she had been a mem-
ber of, and a regular attendant at, the Protestant Episcopal Church.
She took an active part in all church work and all societies and organiza-
tions connected with the Church.   The church she attended and worked
with was located in Brockport, N. Y.   There was a society connected with
the Protestant Episcopal Church known as the "Woman's Auxiliary
to the Board of Missions," which had a branch in Western New York,
and in most parishes local branches of this society existed.   There was
one in the church where the testatrix attended in Brockport.   These
local branches of the Woman's Auxiliary were organized for the pur-
pose of carrying on and aiding the defendant missionary society in its
work among the Indians and its domestic missions.   Testatrix was for
more than 30 years a member of this Brockport church, and was secre-
tary and treasurer of its local branch of this Woman's Auxiliary, and
her branch had often contributed supplies and money to be used in mis-
sionary work in the South and West and among the Indians, a large part
of which was done through the Western New York branch, and the
correspondence on the part of the local branch was carried on by her.
She had often expressed her interest in Indian and domestic missions
and other work done by the defendant missionary society.   She was a
subscriber to the "Spirit of Missions," the missionary paper published
by the defendant missionary society, and its official organ for disseminat-
ing knowledge of its work, and this paper frequently contained arti-
cles on Indian and domestic missions.   Miss Archer, in memoriam
of whom the gift in question was made, was an attendant of the same

Brockport church, was also interested in Indian and domestic missions, and had frequently spoken of them. She lived with the testatrix for 50 years, and during the last 25 years was an attendant of the same church as the testatrix, and interested in and talked about her work. These facts are undisputed, and should put the intention of the testatrix, as hereinbefore stated, beyond doubt. The only incorporated society connected with missionary work within the Protestant Episcopal Church was the defendant missionary society. It was incorporated in this state by chapter 331, p. 470, of the Laws of 1846. Its object, as stated in the act, was to be "conducting missionary operations in all lands," and it was given the power to take real and personal property by gift, grant, devise, or bequest, and to hold, sell, lease, and dispose of the same. Every member of the church was a member of the society. It has conducted its operations under two general branches, known as "Foreign Missions" and "Domestic Missions," and the work known as "Indian Missions" is included in the branch of "Domestic Missions." In view of these conceded facts, it should be found that the testatrix really intended to confer upon the defendant missionary society the title to the $2,000, to be by it used for the benefit of "Indian and Domestic Missions." The facts, therefore, and the conclusion as to the intent of the testatrix, are not in doubt, and the only question is whether the court will give effect to such intent, or whether such intent must be defeated by some rules of law applicable to such cases. The defendant missionary society seeks to uphold this provision, and to give effect to the testatrix's intention, as a gift directly to the defendant missionary society.

In passing upon this question, the trial court quoted from Lefevre v. Lefevre, 59 N. Y. 434, to the effect that:

"A misnomer or misdescription of a legatee or devisee * * * will not invalidate the provision or defeat the intention of the testator, if, either from the will itself or evidence dehors the will, the object of the testator's bounty can be ascertained. * * * Parol evidence is admissible to remove latent ambiguities, and, when there is no * * * corporation in existence precisely answering to the name or description in the will, parol evidence may be given to ascertain who were intended by the testator. * * * And, when any but the corporate name is used, the circumstances to enable the court to apply the name or description to a particular corporation and identify it as the body intended, and to distinguish it from all others, and bring it within the terms of the will, may be proved in all cases by parol."

These are the principles which the defendant missionary society invokes in this case. The trial court, however, gave quite a narrow construction to this language, and held that no corporate name was inserted in the will, and it was as though the name was left a blank, and parol evidence could not be used in such case to show the intention of the testatrix and to uphold the provision of the will. If it had been a pure blank, this would undoubtedly have been true. To illustrate: If the provision had been, "I give ———— $2,000," no evidence could have been given to show that A., B., or C. was intended, and that the name was omitted by mistake. But this case is quite different. Here the design of the testatrix to appropriate this $2,000 to home and Indian missions was plainly expressed in the will itself. She should have specified as the beneficiary the defendant missionary society, the only legal entity

within the church that could take and hold the fund and use it for the purpose designed by the testatrix. The proposition of the trial court was that, if some fictitious name of a corporation not in existence had been inserted, then it could have been shown that an actual corporation of an entirely different name was intended; but, no matter how clear the intention of the testatrix was as to the appropriation of the fund, a fictitious name not having been used, the parol proof could not be given or the provision of the will upheld. Concededly the name used must be fictitious. If the name was of a real corporation in being, then no proof could be given to show another corporation was intended. Why may not the words used in this provision be regarded as fictitious names of corporations not in existence within this rule?

"I give $2,000 to be divided between Indian Missions and Domestic Missions." Inasmuch as the rule involves fictitious names anyway, why may not these words be regarded as such, as well as the many names involved in the adjudicated cases? In the case cited, Lefevre v. Lefevre, supra, the will named, "Home of the Friendless." There was no such corporation in existence. The name was purely fictitious, and it was held that parol proof might be given to show that the "American Female Guardian Society," a real existing corporation, was intended.

In N. Y. Institution for the Blind v. How's Executors, 10 N. Y. 84, the plaintiff was allowed to take a legacy given by the will to "the trustees of the institution for the maintenance and instruction of the indigent blind in the City of New York," not because the name of the corporation was the same, but because the plaintiff was sufficiently described as intended by the will. The court said, "A legacy may be given to a corporation or individual either by name or by description."

In St. Luke's Home for Indigent Christian Females v. Association for the Relief of Respectable Indigent Females in the City of New York, 52 N. Y. 191, 11 Am. Rep. 697, the gift was "to the society for the relief of indigent aged females." There was no such corporation as that named in the will. The court said:

"It is not necessary that a corporation should be designated by its corporate name to entitle it to take as legatee. It is sufficient if it is so described that its identity can be established; that is, so that it may be distinguished from any other. The name is but one of several ways of identifying a person or corporation"—

And it held the defendant entitled to the legacy as being more nearly indicated by name and description in the will than the plaintiff.

In Shipman v. Rollins, 98 N. Y. 311, the "N. Y. C. Mission and Tract Society" was allowed to take a bequest in a will to "the N. Y. Tract Society," the court saying, "It was also sufficient that the legatees were so described that they could be ascertained and known when the right to receive the legacies existed."

In the Matter of Isbell's Estate, 1 App. Div. 158, 37 N. Y. Supp. 919, the provision in the will was:

"I give to the Japan Mission, under the direction of the Baptist Board of Foreign Missions, One thousand Dollars to pay the annual interest of the money well invested with good security."

Neither of these named bodies was a corporation, but they did missionary work under the direction and control of the American Baptist

Missionary Union, which was a foreign corporation. It was held that the testator intended to make this corporation the beneficiary, as it alone could carry out the design of the testator.

In Matter of Wheeler's Will, 32 App. Div. 183, 52 N. Y. Supp. 943, affirmed on opinion of court below, 161 N. Y. 652, 57 N. E. 1128, the will named the devisee the "Home Missionary Society,—I mean the Methodist Home Missionary Society," and it was held by the surrogate that the devise and bequest failed for uncertainty of the devisee. The courts on appeal reversed the surrogate, and permitted the defendant, "the Missionary Society of the Methodist Episcopal Church," to take the devise. This was based upon evidence, dehors the will, that the defendant was the society intended by the testatrix.

In Board of Missions v. Scovell, 3 Dem. Sur. 516, the will gave a legacy "to be divided equally between the Home and Foreign Missions." The surrogate held that the case presented a latent ambiguity explicable by extrinsic evidence, and that one-half of the legacy should go to each of two corporations—the Board of Home Missions and the Board of Foreign Missions of the Presbyterian Church in the United States of America. The language of the clause of the will in that case was very like the language we are considering here, and the extrinsic evidence was very like in its nature.

In Domestic & Foreign Missionary Society's Appeal, 30 Pa. 425, the legacy was to the mission and schools of the Episcopal Church about to be established at or near Point Cressar. The legacy was not claimed directly by or in behalf of the missions and schools themselves, but by the appellant, the same corporation that is appellant in this case. The evidence showed that the appellant established and maintained these missions and schools in Africa, and the court held that the testator must have intended the fund to be administered by the appellant, and the same was awarded to it.

Other cases decided by the lower courts of this state upon this subject are: Tallman v. Tallman, 3 Misc. Rep. 465, 23 N. Y. Supp. 734; Leonard v. Davenport, 58 How. Prac. 384; Greer v. Belknap, 63 How. Prac. 393; Canfield v. Crandall, 4 Dem. Sur. 111; Rily v. Diggs, 2 Dem. Sur. 184; Gray v. Missionary Society (Sup.) 2 N. Y. Supp. 878; Riker v. Society of New York Hospital, 66 How. Prac. 246; In re Lang's Will, 9 Misc. Rep. 521, 30 N. Y. Supp. 388; Wright v. Trustees of M. E. Church, 1 Hoff. Ch. 202. There are also many cases decided by the courts of other states of a like nature.

It seems to us that under the evidence, and in view of the authorities to which we have called attention, the defendant missionary society was sufficiently described and indicated as the beneficiary intended by the testatrix to take hold and use the fund in question. Our conclusion is therefore that the bequest vested at the death of the testatrix directly in the defendant missionary society.

So much of the judgment as is appealed from, and the order, reversed and new trial directed, with costs to the appellant, payable out of the estate, to abide event upon questions of law only, the facts having been examined and no error found therein. All concur, except McLENNAN, P. J., who dissents upon the grounds stated in opinion of NASH, J., delivered at special term (87 N. Y. Supp. 621).