(113 App. Div. 606.)

KINGSBURY et al. v. BRANDEGEE et al.

(Supreme Court, Appellate Division, Fourth Department.    May 9, 1906.)

1. WILLS—DESIGNATION OF DEVISEE—RELIGIOUS SOCIETIES.

Laws 1841, p. 109, c. 134, created a corporation known as the "Trustees for the Management and Care of the Fund for the Support of the Episcopate of the Diocese of Western New York," the object of which was the management and care of a fund for the support of the bishop.    Laws 1863, p. 80, c. 59, created a corporation known as the "Trustees of the Parochial Fund of the Protestant Episcopal Church in the Diocese of Western New York," which was to care for a fund to be devoted to the support of ministers, purchase of parsonages, and for parochial schools. By Laws 1868, p. 853, c. 429, provision was made, in view of the division of the diocese of New York, for the creation of a new corporation in the new diocese, subsequently called the "Diocese of Central New York," the powers and object of such new corporation to be the same as those specified in the act of 1841, and also for the creation of a new corporation, in the new diocese, the powers and object to be the same as those specified in the act of 1863.    Testatrix's will gave a certain house and its furniture to the corporation of the "Diocese of Central New York," to be used as the bishop's residence, all furniture to remain in the house, provided that, should the diocese ever be divided, the property should remain "in the name of the diocese in which it is embraced, whatever the name of such diocese may be," and such land as testatrix might leave was devised to the diocese, to be held as an investment.    There was no corporation known as the "Diocese of Central New York."    *Held*, that testatrix intended the property to go to the corporation created by the laws of 1841 and 1868.

2. CHARITIES—BENEFICIARIES—CERTAINTY.

The provisions of the will were not ineffectual and void, but the Supreme Court should administer the trust and appoint the corporation created by the laws of 1841 and 1868 trustee under the provisions of Laws 1893, p. 1748, c. 701, as amended by Laws 1901, p. 751, c. 291, providing that no devise to religious uses shall be invalid by reason of indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder, and that if no person be named as trustee the title shall vest in the Supreme Court.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Charities, §§ 42, 85.]

Kruse, J., dissenting.

Appeal from Special Term, Oneida County.

Suit by Oliver A. Kingsbury and another, as executors of the will of Amy J. Perkins, deceased, against John E. Brandegee, as executor of the will of Henry S. Miller, deceased, and others, for a construction of the will of plaintiffs' testatrix.    From the judgment John Cunneen, as Attorney General, and others, appeal.    Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Julius M. Mayer, Atty. Gen., Horace McGuire, Deputy Atty. Gen., and Matteson & De Angelis, for appellants.

Charles A. Miller, George M. Weaver, J. T. A. Doolittle, A. M. Mills, W. J. & F. W. Welsh, Sholes, Ferris & Foley, Charles D. Thomas, Frank T. Warburton, and Holmes & Waterman, for respondents.

WILLIAMS, J.  The judgment should be reversed, and a new trial granted, with costs to the appellants to abide event.

The action is for a construction of the provisions of the will of Amy J. Perkins.  She died, leaving no husband and no lineal descendants. Her only heir and next of kin was Mary A. Petrie, who died after the deceased.  The deceased left a will and three codicils.  She left personal property, exclusive of specific legacies, valued at $26,531.46, and real estate valued at $32,310.  Two parcels of this real estate, valued at $15,000 and $6,000, respectively, and some specific articles of personal property, are involved in this controversy.  The will contains the following provisions, which are sought to be construed:

"My estate shall pass as follows: Block 111, on which my stone house (my present residence) is situated, and a portion has been distinguished as 'Amy Place' on a map of property in the town of New Hartford, belonging to the late George R. Perkins (1870), and which map was filed in the office of the clerk of Oneida county, May 30, 1871, together with such furniture, pictures, and books, contained in the house at the time of my death as are not hereinafter otherwise disposed of, I give, devise, and bequeath to the corporation of the 'Diocese of Central New York,' to be used as the bishop's residence of said diocese.  All the personal effects which may be in my said stone house, and whose removal shall not hereinafter be designated, shall pass to said diocese, on condition that the same remain in said house undisturbed and be kept in good preservation as possible.  But I do not prohibit the ordinary use and occupation of said house and furniture.  Should this diocese ever be divided, this property shall not be subject to such division, but shall ever remain in the name of the diocese in which it is embraced, whatever the name of such diocese  may be.  Such land as I may leave unsold, bounded easterly by Perkins avenue, northwesterly by the West Shore R. R., and southerly by Seward avenue, I devise and bequeath to said diocese of Central New York, to be held as an investment."

None of these provisions were revoked or changed by the codicils. The will was executed January 22, 1895; first codicil, July 30, 1897; second codicil, May 25, 1899; and third codicil, September 12, 1901. The death of deceased occurred June 4, 1902.  There never was any corporation known or designated as the "Diocese of Central New York."  ·The term is used to designate a subdivision of territory in which the Protestant Episcopal Church operates in the state of New York.  This diocese embraces the counties of Broome, Cayuga, Chemung, Chenango, Courtland, Jefferson, Lewis, Madison, Oneida, Onondaga, Oswego, Seneca, Tioga, and Tompkins.  Of late years there have been in this diocese a bishop and a bishop coadjutor; the former residing in Syracuse, Onondaga county, and the latter in Utica, Oneida county.  The bishop has recently died, and the bishop coadjutor has succeeded him as bishop.  These persons are required to reside in the diocese and are supported by a voluntary religious association known as the "Protestant Episcopal Church of the Diocese of Central New York."

By chapter 134, p. 109, Laws 1841, a corporation was created, known as the "Trustees for the Management and Care of the Fund for the Support of the Episcopate of the Diocese of Western New York," and was given power to take and hold, by gift, grant, or devise, and to purchase, hold, and convey, real and personal property necessary for its purposes, the yearly value or income not, however, to exceed $5,000. ·

The object of the corporation was the management and care of the fund for the support of the bishop, under the directions of the convention of the church for the diocese. By chapter 59, p. 80, Laws 1863, another corporation was created known as "Trustees of the Parochial Fund of the Protestant Episcopal Church in the Diocese of Western New York," and was given power to receive and hold, by deed, conveyance, or last will and testament, property for the creation and accumulation of a fund, real and personal estate, the annual income from which should not exceed $60,000, to be devoted to the assistance and support of ministers, the purchase and erection of parsonages, and for parochial and theological schools and missions within the diocese. By chapter 429, p. 853, Laws 1868, provision was made, in view of the division of the diocese of Western New York, for the creation of a new corporation in the new diocese subsequently called the "Diocese of Central New York," the powers and object of such new corporation to be the same as those specified in the act of 1841, and also for the creation of a new corporation, in the new diocese, the powers and object to be the same as those specified in the act of 1863. By chapter 106, p. 117, Laws 1887, the powers and objects of the corporation created under the act of 1868, in the new diocese, in place of the corporation of 1863, were extended, and by chapter 308, p. 530, Laws of 1888, the latter act was amended. This latter corporation was and is entirely separate and distinct from the corporation created in the new diocese by the act of 1868, in place of the corporation of 1841, now known as the "Trustees for the Management and Care of the Fund for the Support of the Episcopate of the Diocese of Central New York," and its object being the "management and care of the fund for the support of the bishop, under the directions of the convention of the church for the diocese." This is the corporation with which we have to do in this controversy.

There can be no doubt that the testator intended by the provisions in her will above quoted to give the real estate and personal property therein described to the legal entity in the diocese having power to take and hold the same for a residence for the bishop and the support thereof. This entity is clearly the 1841–1868 corporation, and not the 1863–1868 one. While the latter clause gives the real estate therein described generally to the diocese, "to be held as an investment," yet the clauses are all together, and the testator's intention evidently was to provide for the bishop, and not for the purposes of the 1863–1868 corporation. This is the more reasonable construction and should be adopted as the correct one. The intention of the testator, as herein stated, sufficiently appears from the language of the will itself and needs no extraneous evidence to support it, aside from proof of the conditions in the church organization and diocese.

The trial court held these provisions were ineffectual and void, and that this property was a part of the residuary estate, and passed under the provisions of the will relating thereto. In this we think the court was in error. So far as the law is concerned, we need only to refer to the case of Bowman v. D. & F. M. S. P. E. Ch. in the U. S., 100 App. Div. 29, 90 N. Y. Supp. 898, modified 182 N. Y. 494, 75 N. E. 535, and the cases therein referred to. In the Appellate Division the prevailing opinion cited and considered all the cases deemed

applicable to the question. The dissent of one member of the court was put upon the grounds stated by the trial court, reported 42 Misc. Rep. 574, 87 N. Y. Supp. 621. The clause in the will there involved was:

"I give, devise, and bequeath the sum of two thousand dollars, to be equally divided between the Indian missions and domestic missions of the United States, in memoriam to the late Mary A. Archer."

There was no doubt that the testatrix intended to have the fund devoted to the purposes of those missions in the Protestant Episcopal Church, and the Appellate Division held that the property vested in the corporation defendant which had charge of funds devoted to those missions, known as the "Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America," and was the only legal entity that could take and administer funds for those purposes. There was no reference in the prevailing opinion to the provisions of chapter 701, p. 1748, Laws 1893, amended by chapter 291, p. 751, Laws 1901. In the opinion by the trial court, adopted as a dissenting opinion in the Appellate Division, it was said that there was no attempt to name any corporation as the beneficiary to take and administer the trust fund, but the purposes to which the fund was to be applied merely were stated, and therefore it held the gift was void. This was the point decided, and no mention was made in this opinion of the statute of 1893 and 1901, above referred to. The Court of Appeals, without any discussion of the cases, held that the trial court was correct, that the will was too indefinite to be construed as a direct bequest either to the corporation named or to any other beneficiary, and then held that the bequest did not fail, but could be supported as a trust for charitable purposes under the provisions of the acts of 1893 and 1901:

"No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of this state, shall be, or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder, in the instrument creating the same. If in the instrument creating such gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purpose shall vest in such trustee. If no person be named as trustee, then the title to such lands or property shall vest in the Supreme Court."

It was held, also, that the effect of this statute was to restore the ancient doctrine of charitable uses and trusts as a part of the law of this state (Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568), and was designed to cover just such a case as the one at bar; that the obvious purpose of the testatrix was to have this fund distributed for the benefit of domestic and Indian missions; that the corporation defendant was the organized medium through which the church carried on its missionary operations; that the Supreme Court had power under this statute to administer this trust as one in which the beneficiary or trustee was not named or designated with absolute certainty or correctness, and this it could do through the instrumentality of a trustee appointed by it; that it would doubtless be influenced in the choice of a trustee by the nature of the charity to be administered, and might appoint the corpo-

ration defendant as the medium best adapted to accomplish the end sought.

Under this decision, it is quite apparent that the provisions of the will here in question are not, as held by the trial court, ineffectual and void.  They should be upheld, either under the cases referred to by the Appellate Division or under the statutes of 1893 and 1901.  We see no reason why they should not be construed as vesting absolute title in this corporation of 1841–1863.  There is here a devise directly to a corporation, and we may hold this corporation was intended, though incorrectly named.  In the Bowman Case there was no attempt to make a devise to any corporation at all.  Only the purposes for which the devise was made were stated.  In this respect the two cases are distinguishable, and this case is clearly within many of the cases referred to by the Appellate Division in that case.  But, if it is said that the beneficiary or trustee is not indicated with sufficient certainty or correctness, then it is covered by the statutes of 1893 and 1901, as interpreted and applied by the Court of Appeals in the Bowman Case, and the Supreme Court should administer the trust and appoint the corporation of 1841–1868 as trustee as the "medium best adapted to accomplish the end sought."

We are of the opinion, in view of the Bowman Case, the latter course had better be adopted.  Although many of the provisions of the judgment are not in controversy, yet under the circumstances, and the changes rendered necessary by this decision, we think a new trial had better be had, rather than an attempt to modify the judgment.  It will be merely formal trial, in view of the decision here made.

Judgment reversed, and new trial ordered, with costs to the appellants to abide event.  All concur, except KRUSE, J., who dissents on the ground that the testamentary disposition nominally to the diocese of Central New York is void.