of the proceedings of officers, unless it be so declared under the statute. And in a subsequent part of the same opinion he says: "And we have already seen, by reference to the adjudications, that statutes directing the mode of proceeding of public officers are regarded as directory, unless there is something in the statute itself which plainly shows a different intent." In other words, unless the only consideration of the statute shows that the Legislature intended compliance with the provisions in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely. The rule of construction to be gathered from the authorities is that irregularities are to be disregarded, unless the statute expressly declares that they shall be followed. Ignorance, inadvertence, mistake, or even intentional wrong on the part of the local authorities should not be permitted to disfranchise the voters of a town, unless the statute expressly declares that they shall be fatal to the election, or rendered doubtful as to the result. McCrary, Elections, § 227.

In People ex rel. Hirsh v. Wood, 148 N. Y. 146, 42 N. E. 537, Chief Justice Andrews said:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the willful misconduct, of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

It was held in Matter of Arnold, 32 Misc. Rep. 439, 66 N. Y. Supp. 557, that it was not a valid objection to the legality of the submission of the question of local option, when clearly distinguished upon a ballot, that the ballot contains constitutional amendments submitted to the people, nor that the local option questions were not numbered 1, 2, 3, and 4, respectively, or that question 4 was not in the words prescribed by the liquor tax law as amended. Laws 1897, p. 216, c. 312, § 9. In People ex rel. Leonard v. Hamilton, 42 App. Div. 212, 59 N. Y. Supp. 943, it was held that irregularities in the certificate of an election officer cannot be permitted to defeat the will of the electors, and that the intention of the electors is paramount thereto. The motion therefore must be denied, with $10 costs.

Motion denied, with $10 costs.

---

(42 Misc. Rep. 574.)

### BOWMAN v. DOMESTIC & FOREIGN MISSIONARY SOC. OF PROTESTANT EPISCOPAL CHURCH.

(Supreme Court, Special Term, Monroe County. February, 1904.)

1. CHARITABLE BEQUEST—VALIDITY.

A communicant of the Protestant Episcopal Church bequeathed by will $2,000, to be equally divided between the "Indian Missions and the Domestic Missions of the United States." There was nothing to show that any society was to take the bequest, and there was no extrinsic evidence that testatrix had in mind any society connected with her church, nor was

there any proof of any corporation having a name such as that used in the will. *Held*, that the bequest was void for indefiniteness.

2. SAME—BENEFICIARY.

A bequest in a will of a fund "to be equally divided between the Indian Missions and the Domestic Missions of the United States of America" does not entitle the Domestic & Foreign Missionary Society of the Protestant Episcopal Church in the United States of America to claim the bequest.

Action by John P. Bowman, executor of Mary W. Jewett, against the Domestic & Foreign Missionary Society of the Protestant Episcopal Church in the United States of America and others, to construe a will. Judgment rendered.

T. Nigham, for plaintiff.

Davies, Stone & Auerbach (Julien T. Davies, Eugene C. Denton, and Chas. K. Allen, of counsel), for defendant missionary society.

Wellington, Jones & Millard, for defendants Tapley.

Delbert A. Adams, for defendant Clark.

Ernest B. Millard, special guardian.

NASH, J. The only clause of the will of the testatrix which at this time needs to be considered is the following:

"Seventh. I give, devise and bequeath the sum of two thousand dollars, to be equally divided between the Indian Missions and Domestic Missions of the United States of America, in memoriam of the late Mary A. Archer."

At the time of her death the testatrix was a resident of Clarkson, N. Y., where she had lived all her life. She was a communicant of the Protestant Episcopal Church in Brockport, near her home, and a constant attendant at that church up to the time of her last illness. She took a strong interest in the work of that church and its charities. It appears that the defendant claiming the legacy is the Domestic & Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, a corporation incorporated by the Laws of 1846, p. 470, c. 331, which was subsequently amended by the Laws of 1867, p. 834, c. 374, and by the Laws of 1880, p. 346, c. 226, and again by Laws of 1892, p. 1800, c. 687; that none of said amendments refer to Laws of 1848, p. 447, c. 319; that the object of said defendant missionary society is to conduct general missionary operations in all lands; that its principal office is located in the city of New York. It conducts its missionary work in the Western states and territories, among the Indians, colored people, and white people, and disburses large sums of money in the prosecution of such work. There is no corporation having the corporate name of Indian Missions and Domestic Missions in the United States, and no corporation having the corporate name of Indian Missions of the United States, or Domestic Missions of the United States, or Indian Missions, or Domestic Missions. The defendant missionary society publishes a monthly magazine, called "The Spirit of Missions," to which the decedent had been a subscriber for many years prior to her death. There is a society known as the Woman's Auxiliary of the Board of Missions of the Protestant Episcopal Church in the United States of America, which has branches in various parts of this country; and there was such a branch of such

woman's auxiliary in Brockport, Monroe county, N. Y., of which the decedent was a member, officer, and active worker, and was at times instrumental in preparing and forwarding boxes of clothing to workers allied to the defendant missionary society, and whose appeals had reached her through her church or through the woman's auxiliary. There is nothing in the will, other than the language of the seventh item—the bequest itself—to indicate that the defendant missionary society or any society or corporation should take the bequest and apply it to the purposes named.

The rule applicable for the purpose of ascertaining the intent of the testator where the language of the will is ambiguous is comprehensively stated by Allen, J., in Lefevre v. Lefevre, 59 N. Y. 434, as follows:

"A misnomer or misdescription of a legatee or devisee, whether a natural person or corporation, will not invalidate the provision or defeat the intention of the testator, if, either from the will itself, or evidence dehors the will, the object of the testator's bounty can be ascertained. No principle is better settled than that parol evidence is admissible to remove latent ambiguities, and, when there is no person or corporation in existence precisely answering to the name or description in the will, parol evidence may be given to ascertain who were intended by the testator. A corporation may be designated by its corporate name, by the name by which it is usually or popularly called or known, by a name by which it was known and called by the testator, or by any name or description by which it can be distinguished from every other corporation; and, when any but the corporate name is used, the circumstances to enable the court to apply the name or description to a particular corporation, and identify it as the body intended, and to distinguish it from all others and bring it within the terms of the will, may in all cases be proved by parol."

There is here in the will of the testatrix no attempt whatever to name a corporation, if one was intended, to take and disburse the charity; no attempt to name any society, persons, or corporation which should take the bequest and divide it between the "Indian Missions" and "Domestic Missions"; no other clause of the will from which to infer that the defendant missionary society was intended as the trustee or custodian of the fund. The sum is bequeathed to be equally divided between the "Indian Missions" and "Domestic Missions of the United States," whether by the church of which the testatrix was a communicant, whether by the branch of the woman's auxiliary, of which she was a member and officer, or by the other societies and guilds with which she was connected, is in no manner indicated. In each of the cases cited in support of the defendant's contention there was something to indicate the society or corporation as the intended legatee. In the case of Gilmer v. Stone, 120 U. S. 586, 7 Sup. Ct. 689, 30 L. Ed. 734, the testator left a will by which, after bequeathing his library to the Presbyterian Church of Irish Grove, $500 for the erection of a Presbyterian church in Greenview, Ill., and $50 to be paid on the minister's salary of the Presbyterian Church of Irish Grove for the year 1884, and some other bequests, he bequeathed and devised the remainder of his estate to be equally divided between the board of foreign and the board of home missions. The Presbyterian Church in the United States of America has a corporate board of foreign missions and a corporate board of home missions, but it was agreed by counsel that

several other religious bodies in the United States have similar organizations for the same purposes. It appears from the extrinsic evidence that the testator had been for many years a member and ruling elder of the Irish Grove Presbyterian Church, one of the leading congregations of the Presbyterian Church in the United States of America, and that collections were annually taken up in that congregation for the various boards of that church, including the board of foreign and home missions, to which the testator was a contributor. Held, that there was a latent ambiguity respecting the object of the residuary gift, which could be removed by extrinsic evidence, and that the evidence introduced on this point, taken in connection with the other bequests in the will for the benefit of Presbyterian churches, showed that the testator, in making the residuary gift, had in his mind the board of foreign missions and home missions of the Presbyterian Church of the United States of America. In the case of Board of Missions v. Scovell, 3 Dem. Sur. 516, the bequest was of the residue, to be divided into four parts, "one-fourth to the Home for the Friendless in the City of Lockport, also one-fourth to go to the Home for the Friendless in the City of Rochester; the other two-fourths to be divided equally between home and foreign missions." By the will the testatrix also gave $1,000 to the Presbyterian Church at Holley, and her house at that place for a parsonage, subject to the life estate of a niece. It appeared that the testatrix had been for a long time a member of the Presbyterian Church of Holley, N. Y., which she attended; that there were yearly collections in that church taken for the societies claiming the bequest—the "Board of Home Missions of the Presbyterian Church in the United States of America," and the "Board of Foreign Missions of the Presbyterian Church in the United States of America"; that she was in the habit of making contributions to these societies. It also appeared that there was a woman's auxiliary connected with the church, and that the testatrix was at one time solicited to make her contributions through this society, rather than through the regular church channels, but she refused so to do. It also appeared that the will was drawn by the testatrix, and that, shortly before her death, the will having been read to her, on being told that she should have designated the Presbyterian board, and that she could not then do it, she said to her executor:

"You know that I am a Presbyterian and have given a thousand dollars to the Presbyterian Church at Holley, and my house for a parsonage after Fidelia is through with it, and I want you to see that it goes to the home and foreign missions of the Presbyterian church."

In both of these cases there were not only other bequests in the will indicating the society the testatrix had in mind, but there were also in each case societies connected with the church of the testatrix, having, as part of the corporate name, words used by the testatrix in the will. Nothing of the kind appears in the will under consideration, and the extrinsic evidence does not furnish any suggestion or hint that the executrix had in mind any society or corporation connected with her church which should take the legacy. It is therefore held that the bequest is void for indefiniteness.

As to the other bequests in the will, the rules of law plainly indicate to whom they are payable, or the contingency in which a question would arise may never happen.

Judgment accordingly.