[No. 9309. Department One. April 25, 1911.]

JOHN J. PETH et al., Respondents, v. EDDIE E. SPEAR et al., Appellants.[1]

CHARITIES—CREATION—PURPOSE OF TRUST — EDUCATION. A charitable trust for educational purposes is created by conveyances in trust for the benefit of the membership of a brotherhood for the purpose of a communal industrial institution and the education of the people in the principles of socialism.

CHARITIES—BENEFICIARIES—CERTAINTY. A conveyance for charitable purposes, in trust for the membership, now existing or hereafter to exist, of an unincorporated brotherhood, is not invalid because the beneficiaries are an unascertained or uncertain body or class, that being characteristic of charitable trusts.

CHARITIES—CESSATION OF USE—QUIETING TITLE—ANSWER. In an action to quiet title, an answer alleging that a charitable trust had failed by reason of the fact that the beneficiaries had procured a dissolution of the society through the courts, and a judicial sale of the land, which was void, does not show that the title reverted to the donors of the trust, but only shows a cessation of the uses for which the property was devoted, and is insufficient, on demurrer, to show title in the successors of the donors.

[1]Reported in 115 Pac. 164.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered May 24, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*Parker & Brown*, for appellants.

*Million, Houser & Shrauger*, for respondents.

FULLERTON, J.—The respondents brought this action against the appellants, Eddie E. Spear, David H. Barry, Inza J. Barry, his wife, and others, to quiet title to certain real property situated in Skagit county. The complainants did not attempt to deraign their title in their complaint, but alleged generally that they were the owners in fee simple of the land in question, that they were in possession and entitled to the possession of the same, and that the appellants claimed some title, interest or estate in the premises adverse to them, which claim, they further alleged, was invalid, unlawful, and of no effect. The prayer of the complaint was for a decree quieting title to the property in the plaintiffs against the claims of the defendants. Of the persons made defendants and served with process, the appellants above named alone appeared. They filed an answer to the complaint, putting in issue the allegations of title and ownership in the plaintiffs, admitting, however, their possession of the lands; and by way of an affirmative answer, deraigned the source of the plaintiffs' title as well as their own, averring that they had an equitable title to the property superior to the title of the plaintiffs. The trial court sustained a demurrer to the affirmative answer, and after the election of the appellants to stand thereon, tried the issues raised by the allegations of the complaint and the denials thereof contained in the answer, finally entering a decree quieting title to the premises as prayed for in the complaint. The question for determination therefore is, does the affirmative answer show such title to the premises in the appellants as entitles them to question the title and possession of the respondents.

In the affirmative answer it was alleged, in substance, that on December 30, 1897, certain named persons purchased a portion of the land in question, and caused it to be deeded to one G. E. Pelton, who took it and held it in trust for the purchasers, agreeing to convey it at such time to such persons and on such conditions as the purchasers should direct. That on the next day, pursuant to the direction of the purchasers, Pelton conveyed the property to certain named persons, some seven in number, in trust for the benefit of the "membership now existing and hereafter to exist of the Brotherhood of the Co-Operative Commonwealth," which is described as an "unincorporated association or body of persons acting together for the purpose of owning, acquiring, operating, conducting and maintaining a communal industrial institution, and the education of the people in the principles of socialism." On June 1, 1898, the remainder of the tract in question was deeded to a body of seven trustees, all of whom are named in the body of the deed. The persons named as trustees, however, are not the same as those named in the first deed, three of those first named being omitted and three others substituted. The conditions of the latter deed were the same as the first.

As to the manner in which the trust was administered by the trustees, the answer is somewhat meager. It can be gathered therefrom, however, that the trustees permitted any one who claimed to belong to the general class above described to enter upon and occupy the premises for such period of time as he desired to stay on payment of a certain membership fee. As to the immediate management of the brotherhood's internal affairs, such as the uses to which the land should be put, the number of hours any one should labor, and the character of the labor each should perform, seems to have been left to the members themselves.

It appears that the brotherhood during its earlier history enjoyed fair prosperity. The land was cleared and brought into a high state of cultivation, and useful and extensive

buildings and other improvements were constructed thereon. It is alleged, however, that dissensions gradually began to creep in; that the brotherhood gradually filled up with a class of persons having none of the virtues of industry possessed by the earlier members; that these newer members soon began to put in practice vices not in consonance with the laws of the land, nor in consonance with the more strict ideas of the earlier members; that the result was the division of the membership into factions, which engaged in bitter quarrels and riotous actions over the right to the management and control of the organization and the possession of its property; that these finally became so bitter that a resort to an action in court was had, in which a receiver was appointed, the property sold, and the proceeds divided up between the several members of the brotherhood, which then dispersed.

It is then alleged that the plaintiffs derive their title through this sale; that the title so acquired is invalid and void for want of jurisdiction of the court making the sale, over the persons in whom the legal and equitable title to the property was vested, such persons not being parties to the proceedings under which the property was sold; that the defendants named, appellants here, are the successors in interest of the persons who originally paid the purchase price of the land; that as such they have the superior equitable title to the property against all the world; and that they are entitled to a decree transforming their equitable title into a legal title, and awarding the possession of the property to them.

Based on the facts recited, the appellants argue that the uses expressed in the trust deeds are not charitable; that the trust is void because there are no ascertained beneficiaries, and no beneficiaries capable of ascertainment for whose benefit the trust can be enforced; that since the trust expressed is void, the transaction resulted in an implied trust, in which the trustees named in the deed held the legal title for the benefit of the persons who paid the purchase price; and since

the appellants are the successors in interest of such persons, they are now entitled to declare the trust at an end and have the legal title of the trustees conveyed to them, and such rights in the property as pertain to and follow the legal and equitable title.

But we think the appellants are mistaken in their contention that the use for which the property was donated by their predecessors in interest was not a charitable use. Since the purpose of its donors was to provide a place where the doctrines of socialism could be taught by example as well as by precept, the trust can be said to belong to that species of charitable trusts known as educational. As such it is among the objects enumerated as charitable by the statute of 43 Eliz., c. 4, and within practically all the definitions of a charitable use as announced by the authorities. As is said in 3 Pomeroy, Equity Jurisprudence (3d ed.), § 1023:

"Gifts, devises, and bequests in trust for educational purposes are valid, since they are all clearly within the spirit of the statute. This class embraces all trust for the founding, endowing, and supporting schools and other similar institutions which are not strictly private; for the establishment of professorships, and maintenance of teachers; for the education of designated classes of persons, as the poor children of a town; for the promotion of science and scientific studies; and generally for the advancement of knowledge, learning, and education."

Nor is the trust rendered invalid by the fact that the beneficiaries of the trust are an indefinite number of persons or of an uncertain body or class. Indeed, these requisites are essential to a charitable trust.

"One of the distinguishing elements of a 'charitable' as compared with an ordinary trust consists in the generality, indefiniteness, and even uncertainty which is permitted in describing the objects and purposes or the beneficiaries. From the very definition of a 'charitable trust' the beneficiaries are always an uncertain body or class; but the doctrine goes further than this. If the donor sufficiently shows his intention to create a charity, and indicates its general nature and

purpose, and describes in general terms the class of beneficiaries, the trust will be sustained and enforced, although
there may be indefiniteness in the declaration and description,
and although much may be left to the discretion of the
trustees." 3 Pomeroy, Equity Jurisprudence (3d ed.),
§ 1025.

So in *Russell v. Allen,* 107 U. S. 163, it was said:

"By the law of England from before the Statute of 43 Eliz.
c. 4, and by the law of this country at the present day (except
in those states in which it has been restricted by statute or
judicial decision, as in Virginia, Maryland, and more recently
in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would
fail. Being for objects of permanent interest and benefit to
the public, they may be perpetual in their duration, and are
not within the rule against perpetuities; and the instruments
creating them should be so construed as to give them effect
if possible, and to carry out the general intention of the
donor, when clearly manifested, even if the particular form
or manner pointed out by him cannot be followed. They
may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness,
which is one characteristic of a legal charity. If the founder
describes the general nature of the charitable trust, he may
leave the details of its administration to be settled by trustees
under the superintendence of a court of chancery; and an
omission to name trustees, or the death or declination of the
trustees named, will not defeat the trust, but the court will
appoint new trustees in their stead."

Since, therefore, the trust was valid, and the uses for which
the property was donated were capable of being carried into
effect, it follows that the trust is still in existence and the
appellants are without interest, unless it can be said that the
purposes of the express trust have failed. As to this the
answer is silent. The only allegation in the answer on this
subject is that certain of the so-called beneficiaries of the
trust procured a dissolution of the society through the courts,
sold the trust property, divided the proceeds among themselves, and left the land. If this proceeding was invalid, as

the appellants contend, then there has been no sale of the property or dissolution of the society, and hence no failure of the purposes of the trust. On the other hand, if the proceedings be valid, then there was a valid disposition of the property which cut off the appellants' interests and they cannot recover in any event. But we think a proper construction of the answer is that there has been only a cessation of the use for which the property was originally donated, and that such use can be resumed again at any time by the trustees named in the deeds.

This view of the case renders it unnecessary to discuss the validity of the respondents' title. Since the appellants have none, they cannot question the possession which concededly the respondents have. The judgment is affirmed.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.