[No. 15869. Department Two. June 29, 1920.]

ABEL WHITE, *Appellant*, v. JOHN C. WHITE *et al.*, *Respondents.*[1]

WILLS (5, 7)—TESTAMENTARY CAPACITY—INSANITY—EVIDENCE—SUFFICIENCY. Mental capacity to execute a will is sufficiently shown notwithstanding physicians examined the testatrix about a year previously and testified that she was then an incompetent, suffering from senile dementia, a progressive and incurable disease, where she lived for nearly three years thereafter, her condition became much improved, she died from another disease, and witnesses testified that she comprehended the transaction.

SAME (20)—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY. Undue influence to make a will in favor of one who had acted as guardian for testatrix while she was incompetent is not established by the mere fact of the fiduciary and confidential relations existing between her, the guardian, and the attorney who drew the will.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered October 20, 1919, upon findings in favor of the defendants, dismissing an action to contest a will. Affirmed.

[1]Reported in 190 Pac. 1003.

*E. N. Eisenhower* and *Bates & Peterson,* for appellant.

*Herr, Bayley & Croson, F. D. Oakley,* and *M. F. Porter,* for respondents.

MOUNT, J. — This action was instituted by Abel White to set aside a will made by his sister, Harriet Young, deceased. The petition alleges, in substance, that the testatrix was incompetent to make the will in question, and that the will was executed under and because of undue influence exerted upon her by John C. White and M. F. Porter. The case was tried to the court and a jury. The jury returned a verdict in the form of special interrogatories, finding in substance that the testatrix, at the time she made the will in question, was not competent to make a will, and that the will was the result of undue influence exercised by John C. White or other persons. On the return of this verdict, which the trial court treated as advisory, the court reversed the findings of the jury, and after finding the facts in the case, concluded as follows:

"That at the time of the execution of her last will, the deceased had very largely recovered from the weakened condition which existed during the summer of 1915; that she had sufficient mental power and capacity to understand what she was doing and to know her property and to remember her friends and relatives, and that the said will was duly and properly executed by her without any undue influence on the part of John C. White, M. F. Porter, or any other person, and that the said will as admitted to probate in the court on June 1, 1918, is the last will and testament of the said Harriet Young, deceased, and was properly so admitted."

The trial court thereupon dismissed the proceedings. The petitioner has appealed from that judgment.

The only questions presented in the case are ques-

tions of fact, as stated by counsel for appellant in their brief as follows:

"1st. Was Harriet Young, on June 29th, 1916, competent to make a valid will?

"2nd. Was the paper signed by her on that day the result of undue influence exercised by John C. White and other persons?"

But for the fact that the trial court and the jury, after listening to the evidence, arrived at directly opposite conclusions, we would be satisfied to say that the facts as found by the trial court were amply sufficient to justify the court's finding. In view of the fact that the trial court and the jury do not agree in their conclusions upon the facts, it may be well to state some of the more important contentions of the parties hereto. The following facts, we think, are not disputed: Harriet Young, the testatrix, died in the Dunlap Hotel at Puyallup, on May 27, 1918. Her nearest surviving relative at that time was her brother, Abel White. At the time of her death she had property, consisting of real and personal property, of the value somewhere between $60,000 and $80,000. On June 29, 1916, she was eighty-five years of age. At that time she executed a will drawn by M. F. Porter, who had been for several years her attorney and confidential adviser and who prepared the will at her request. According to the terms of this will, she left a farm near the town of Sumner, in Pierce county, Washington, to a nephew, John C. White, and, also, $8,000 in cash. The rest, residue and remainder of her estate, not to exceed $50,000, she devised to certain named persons, in trust, for the purpose of incorporating and maintaining a charitable institution in the town of Puyallup, Washington, to be known as the "Harriet Young Young Men's Christian Association." The will provided that the further residue was charged with the

payment of twenty-five dollars per month to Lewis McAdams and Willis Y. McAdams, nephews of the said deceased, who were also to be given rooms without charge in said Y. M. C. A. building.

In the year 1915, the deceased was induced by one Barron to make a sale of her farm near Sumner. This sale was made for a wholly inadequate price and upon unreasonable terms. Upon hearing of this sale, Mr. Porter brought an action in the superior court of Pierce county to set aside the sale. Thereafter a petition was filed in the superior court of Pierce county, alleging that Mrs. Young "has by reason of her advanced age and bodily infirmities, become mentally incompetent either to care for herself or to manage her property." Upon the hearing of this petition, the doctors who had called to see her and had heard evidence of her manner of life testified that she was afflicted with senile dementia at that time. The court thereupon found that she was incompetent to take care of her business, and her nephew, John C. White, was appointed guardian of her estate. Thereafter this guardian was substituted as a party plaintiff, and, upon issues joined, the transaction with Mr. Barron was set aside. Thereafter Mr. White continued as guardian of her estate. He transacted all her business.

In October of 1915, the deceased was taken to the Dunlap Hotel in Puyallup, where she lived from that time until her death, which occurred in May, 1918.

The appellant contends that the deceased was incompetent to make a will in June of 1916, because at that time she was suffering from senile dementia and was incompetent to manage her own affairs, and because a guardian had been appointed a year previously to care for her estate. There is testimony in the record by doctors who, in answer to hypothetical questions detailing her condition both prior and after the

year 1915, stated that it was their opinion she was afflicted with senile dementia. All the doctors who testified in the case seem to agree that this disease is a progressive disease, that it is one which destroys the brain cells and permits of no improvement or recovery, but grows gradually worse until death. We think it is undisputed—at least the great weight of the evidence is to the effect—that nearly three years after physicians testified that Mrs. Young was afflicted with senile dementia she did not die of that disease, but that her death was caused by bronchial pneumonia, and that, prior to the time she contracted this disease, she was much improved mentally. So it is apparent that whatever caused her affliction in 1915, it was not senile dementia. If not senile dementia at that time, it was not senile dementia later. We think the evidence to the effect that, prior to her affliction in 1915, she had lived alone upon her ranch without sufficient nourishment and had been quite sick on a number of occasions, sufficiently explains the cause of her condition in 1915, and that she was temporarily, rather than permanently, incapacitated at that time. We are satisfied, after a careful reading of the abstract of the evidence, that Mrs. Young was not afflicted with senile dementia in June of 1916, and we are also satisfied that she was free at that time to make her will. We said in *In re Murphy's Estate,* 98 Wash. 548, 168 Pac. 175, quoting from *Points v. Nier,* 91 Wash. 20, 157 Pac. 44, Ann. Cas. 1918A 1046, regarding a will, "suspicion, however great, is not enough to nullify it."

"This court has laid down the rule in the case of *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385, quoting from Redfield on Wills, as to what the quantum of mental capacity to make a will is, as follows:

" 'The result of the best considered cases upon the subject seems to put a quantum of understanding requisite to the valid execution of a will upon the basis

of knowing and comprehending the transaction, or, in popular phrase, that the testator should at the time of executing the will know and understand what he was about.'

"We hold the view that the right to dispose of one's property by will is one assured by the law and is a valuable incident to ownership, and does not depend upon its judicious use."

Prior to the time the testatrix executed the will in question, she had executed at least four other wills, and in each of these wills she had made provision for some charitable purpose similar to the one here in question, and in those wills she provided for her brother to the extent of $100. At the time she requested this will to be drawn, she stated to Mr. Porter, whom she employed to draw the will, that she would give her brother $100, because she was afraid he would attempt to set her will aside unless she gave him something. When informed that was not necessary, she directed that nothing be left to her brother. She had a number of nieces and nephews, for none of whom, except the McAdams boys, had she made provision in any of her previous wills. The main difference between this will and other wills is that, in the other wills, her nephew, John C. White, was not mentioned. In this will he received a large portion of her property. We think there is nothing unnatural in this, because Mr. White had for several years been caring for her and her property. She had trusted him implicitly and had told him upon different occasions that she expected to remunerate him by her will. We think the whole evidence bears out the conclusion of the trial court that she was in her right mind, capable of disposing of the property, and did so as she desired it to go.

Upon the question of undue influence, we failed to find any evidence that either Mr. Porter or Mr. White

induced the testatrix to make the will she did, or any will. It is argued by the appellant that the fiduciary relationship and confidential relations existing between the testatrix and her guardian and her attorney, M. F. Porter, are sufficient to show undue influence. While there were confidential relations existing between these parties, we think the evidence conclusively shows that relation was not used in any way to influence the testatrix in making her will. She had said to John C. White upon different occasions that she intended to give him her property, and he in turn said to her that she ought to remember her other relatives. When she asked Mr. Porter to draw the will, Mr. Porter inquired very carefully concerning the disposition she desired to make of her property, and, after the will was drawn, he gave it to her and told her to read it over and study it carefully, and if she was not satisfied with it to return it to him and he would change it, or words to that effect. She took the will after it was drawn and kept it for several days before it was finally executed.

Some contention is made by the appellant to the effect that one of the witnesses was a doctor, and that this of itself is a suspicious circumstance. It is true that the doctor was a witness to the will. He had treated her professionally. He examined the testatrix before he signed the will as a witness to determine her qualification at that time, and he concluded that she was qualified and, therefore, signed the will as a witness. Considering all the circumstances, there is nothing in this to warrant criticism.

We are satisfied from all the evidence in the case that there was no undue influence, and that the testatrix was fully competent to execute the will.

The judgment appealed from is therefore affirmed.

HOLCOMB, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.