[No. 15855.   Department One.   July 12, 1920.]

*In the Matter of the Estate of* GEORGE R. WILSON, WILLIAM CHISLETT, *Appellant,* v. CITY OF SEATTLE *et al., Respondents.*[1]

WILLS (64)—CONSTRUCTION—MISNOMER—EVIDENCE TO EXPLAIN AMBIGUITY.  A will bequeathing $5,000 to each of the following named charitable institutions, naming with two other children's charities, "Tuberculosis Sanitarium, all located in Seattle or King County," there being none officially known by that name, presents such an ambiguity or misnomer as to admit of extrinsic evidence that the city of Seattle operated a free tuberculosis hospital north of the city, some miles from testator's home, popularly known by several designations, one of which was "Tuberculosis Sanitarium," which was the only strictly charitable institution of its kind in King county, and that, at the time the will was executed there was an extensive publicity campaign for the purpose of securing donations for a children's building at such institution; and such evidence warrants the finding that the city institution was intended by the will.

CHARITIES (3)—"CHARITABLE INSTITUTION."  A county tuberculosis sanitarium rendering free services, is a "charitable" institution, within the meaning of a will, notwithstanding it is supported by funds raised by taxes.

[1]Reported in 191 Pac. 615.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 11, 1920, distributing the estate of a decedent, after a hearing before the court. Affirmed.

*Poe & Falknor,* for appellant.

*Walter F. Meier* and *Geo. A. Meagher,* for respondents.

MACKINTOSH, J.—January 27, 1914, Geo. R. Wilson executed his will, one clause of which provided:

"I give and bequeath five thousand dollars to each of the following named charitable institutions: Washington Children's Home Society, Orthopedic Hospital, Tuberculosis Sanitarium, all located in Seattle or King county, Wash. . . ."

On May 26, 1916, the will was admitted to probate, and from the decree of distribution made October 24, 1919, the residuary legatee has appealed, on the ground that the bequest of $5,000 to the "Tuberculosis Sanitarium" is void for uncertainty, in that no such charitable institution as the "Tuberculosis Sanitarium" existed, or exists, in Seattle or King county. The decree ordered this bequest paid to the city of Seattle, as the owner of a hospital devoted to the care and cure of persons afflicted with tuberculosis.

Unquestionably courts, in the administration of these matters, look with kindliness upon legacies and devises made to the use of charity, and rather than allow benevolent intentions to prove abortive, go to the full length of their ability to fulfill them. By § 45, chapter 156, Laws of 1917, we are admonished to have due regard to the direction of the will, and to accomplish the true intent and meaning of the testator. *In re Stewart's Estate,* 26 Wash. 32, 66 Pac. 148; *Peth v. Spear,* 63 Wash. 291, 115 Pac. 164. The intention of

a testator is generally to be gathered from the instrument itself, but where there is an ambiguity, such as the misnomer here, extrinsic evidence is admitted to show the real intent of the testator. Where there is an ambiguity and there is no extrinsic evidence, or the extrinsic evidence does not directly show intent, the bequest fails for indefiniteness and uncertainty. *Bowman v. Domestic & Foreign Missionary Society etc.,* 42 Misc. Rep. 574, 87 N. Y. Supp. 621.

The city claims that the evidence establishes that it was the testator's intention to bequeath to it the $5,000 for its hospital. It appears that there is no institution in Seattle or King county officially known as the "Tuberculosis Sanitarium," but that, in July, 1912, the Anti-Tuberculosis League of King county, a corporation, then the owner of a tuberculosis hospital, conveyed the institution to the city, which thereafter has operated it, supporting it by general taxation and rendering free service to those receiving its care and attention. In the winter of 1913-14, the Anti-Tuberculosis League was engaged in an extensive campaign of publicity for the purpose of securing donations to be used for the establishment of a building at the city's hospital to be devoted to the treatment of children. Mr. Wilson lived north of the city of Seattle, and the hospital was also north of the city limits, though some miles from his residence. The testimony of several witnesses was to the effect that, in 1914, the city's hospital was popularly known by several designations, such as "Firlands," being the name of its location; "Pulmonary Hospital"; "Pulmonary Sanitarium"; "Tuberculosis Hospital"; "Firlands Hospital"; "Firlands Sanitarium"; "Tuberculosis Hospital at Firlands"; "Firlands Tuberculosis Hospital"; and "Tuberculosis Sanitarium." There existed at the time

but one other hospital for tubercular patients, which was not a strictly charitable institution, in that it charged fees to its patients, although the charges were but sufficient to meet the expense of operation. This institution was popularly known as the "Riverton Tuberculosis Sanitarium," or "Riverton Pulmonary Sanitarium (or Hospital)"; or "Riverton Sanitarium (or Hospital)."

Appellant advances the argument that the city's hospital does not come within the description of the testator of a "charitable institution;" but in this he errs, for, as already adverted to, the services performed are gratuitous, though the source of the maintaining revenue is derived from taxation. The question of whether an institution is a charitable one is determined more by its deeds than by its sustaining methods or motives. A municipality, by tax raised funds, may operate a charitable institution. *People ex rel. State Board of Charities v. New York Society etc.,* 162 N. Y. 429, 56 N. E. 1004; *Russell v. Allen,* 107 U. S. 163; *State ex rel. Olsen v. Board of Control of State Institutions,* 85 Minn. 165, 88 N. W. 533.

The trial court found that the evidence produced for the purpose of identifying the object of the testator's bounty pointed to the city's hospital and established it as the place for which the testator intended his money to be used. To the same conclusion we are impelled. The hospital was quite generally known by the exact description used in the will, and, moreover, the paragraph of the will which we have before us shows that Mr. Wilson was giving to two other organizations which were devoted to the aid of unfortunate and afflicted children. This, taken in connection with the campaign, in progress at the time the will was drawn, for the benefit of tuberculous children, would seem to point unerringly to an intention to include,

with the other two recipients, a third which was of the same class, *i. e.,* institutions which were performing charitable services for suffering childhood.

The decree may stand as written.

HOLCOMB, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.