[No. 16225. Department Two. April 11, 1921.]

MARY A. ROE, *Appellant,* v. SMITH DUTY, *Respondent.*[1]

WILLS (17, 20)—UNDUE INFLUENCE—EVIDENCE—WEIGHT AND SUFFICIENCY. Upon contest of a will on the ground of undue influence, the testimony to overcome the will must be cogent and convincing; and the relations of the parties, surrounding circumstances, the habits and inclinations of the testator, all furnish competent sources for the guidance of the court in determining the question.

SAME (17, 20)—UNDUE INFLUENCE—EVIDENCE—WEIGHT AND SUFFICIENCY. Persuasion or solicitation of a parent by a child to award him a greater part of the former's estate than is given another child does not constitute undue influence.

SAME (17, 20)—UNDUE INFLUENCE—EVIDENCE—WEIGHT AND SUFFICIENCY. In the contest of a will on the ground of undue influence, where practically all the estate of the testatrix was given to a son and but a nominal bequest to the daughter, the failure of the son as chief beneficiary to testify was a fact proper to weigh and consider, but was not a controlling circumstance.

Appeal from a judgment of the superior court for Columbia county, Mills, J., entered May 19, 1920, dismissing a petition to contest a will. Affirmed.

[1]Reported in 197 Pac. 47.

*S. A. Keenan,* for appellant.

*Will H. Fouts* and *M. F. Gose,* for respondent.

MAIN, J.—This is a will contest. The charge against the will is that of undue influence. The trial court took the advice of the jury upon the facts, and the verdict was returned finding undue influence. In response to a motion subsequently made, the trial court declined to accept the verdict of the jury and entered a judgment dismissing the petition. From this judgment, the appeal is prosecuted.

The will in question is that of Sarah Jane Duty, deceased. The contestant, Mrs. Mary A. Roe, is a daughter, and the chief beneficiary under the will is Smith Duty, a son. About the year 1897, Daniel B. Duty and his wife, Sarah Jane Duty, came to the state of Washington and settled upon a ranch in Columbia county. The son accompanied them. The daughter had, prior to that time, married and was residing with her husband in the state of Kansas. Shortly after Mr. and Mrs. Duty went upon the ranch in Columbia county, their daughter and her husband and family came to this state. A few months thereafter, the father and mother deeded to the daughter eighty acres of land near a ranch upon which they were then residing, reserving therein a life estate. But it appears from the evidence that they did not assert any rights under the reservation. The son subsequently married and lived upon a ranch in the same vicinity.

About the year 1903, Mr. and Mrs. Duty moved to Dayton, where they continued to reside until 1913, when Mr. Duty died. After the father and mother moved to Dayton, the son also moved there and occupied the house a few blocks from them. About a year prior to Mr. Duty's death, he became afflicted with a distressing

illness. The daughter at this time left the ranch and went to the home in Dayton for the purpose of taking care of her father and mother, and continued diligently in this until after her father's death. Shortly after the death of the father, the son left his wife, with whom he was then living at Dayton, and moved into the house with the mother and daughter. Soon thereafter the daughter left the house on account of the attitude of her brother towards her and occupied a cottage in the town. Smith Duty, the son, continued to live with his mother and was her constant companion from this time until her death, which occurred on February 8, 1919.

In 1915, Smith Duty moved with his mother to Seattle, and they were residing there at the time of the latter's death. On May 4, 1914, Mrs. Duty, then residing in Dayton, went to the law office of E. W. Clark and there had her will drawn. She went unaccompanied, gave the data to Mr. Clark from which he drew the will, remained in the office while it was being drafted, and then executed it in the presence of witnesses and departed from the office unattended. After the will was drawn and executed, Mr. Clark wrote upon the envelope, "Last will of Sarah Jane Duty," and handed this envelope, together with the will, to Mrs. Duty. Whether the will was placed in the envelope at the time it does not appear; neither does the evidence disclose whether the envelope was there sealed. After this, the envelope containing the will was placed in a tin box in the vault of the Columbia National Bank at Dayton in which Mrs. Duty kept her papers. Here it remained until the day of her funeral, which took place in Dayton, when Smith Duty directed an attorney to go to the bank and get the will and cause it to be probated.

When Mr. Duty died, he left a will devising his half of the community property to his wife during her lifetime,

with the remainder to his son and daughter, share and share alike. Mrs. Duty, in her will, bequeathed to the daughter, the contestant, the sum of five dollars, and the rest, residue and remainder of her estate to the son, the executor and chief beneficiary under the will. After the will was probated, and within the time required by law, the present contest was instituted by the daughter, claiming that her mother had executed the will while subject to the undue influence of Smith Duty.

The record is long and it would serve no useful purpose to review the evidence here in circumstantial detail. Briefly, it may be said that, as against the will and in support of the charge of undue influence, there is evidence that, upon two or three occasions, the son, prior to the execution of the will, had suggested to his mother that she make a will leaving all her property to him, stating that he had made his insurance policies to her and also had made a will leaving his property to her. There is also evidence that they lived together from the time shortly after the death of Mr. Duty, and were close companions until Mrs. Duty's death.

Upon the question as to whether the relations between the mother and daughter were friendly, the evidence is in dispute. It is not necessary to determine where the weight of the evidence is upon this question; even if the relations of mother and daughter were not friendly, the result of the action would be the same. The evidence in support of the will is to the effect that Mrs. Duty had a strong mind and good will power. Dr. A. F. Burnett, who attended her professionally prior to the time she left Dayton, testified that she had a clear, keen mind and strong will power. Dr. L. W. Renfro, who attended her professionally while she resided in Seattle, testified that she had a normal mind for a person of her age. At the time the will was executed, Mrs.

Duty was sixty-nine years of age. There was also evidence that Mrs. Duty had stated to certain persons, that she did not intend to leave her daughter anything by her will, because the daughter had many years before been deeded the eighty acres of land above referred to, which was then clear of encumbrance and which she had enjoyed the use of since, and that the son had not been provided for in the same manner.

When the charge of undue influence is made, the question is akin to that of fraud, and testimony to overcome the will must be cogent and convincing. *In re Geissler's Estate,* 104 Wash. 452, 177 Pac. 330. From the very nature of a charge of this kind, it can rarely be proved by direct evidence. The relations of the parties, surrounding circumstances, the habits and inclinations of the testator or testatrix, the purposes and wishes exercised at the time when the words would be clothed with the likelihood of truth, all furnish competent source for the guidance of the court when called upon to decide a case of this kind. There is no uniform rule capable of application apart from the facts of each particular case. *In re Tresidder's Estate,* 70 Wash. 15, 125 Pac. 1034.

To vitiate a will there must be more than influence. It must be undue influence. It was not undue influence for the son to persuade or solicit his mother to award him the greater part of the estate rather than to award it to the daughter. Influence becomes undue only when it overcomes the will of the testator or the testatrix, when the act of making the will is the result of such coercion that free agency is destroyed. The disposition of the property may be changed by the influence exercised, but so long as the mind of the testator or testatrix is not overborne by the mind of another, it does not amount to undue influence. *In re Patterson's Estate,*

68 Wash. 377, 123 Pac. 515; *Jasinto v. Hamblen,* 79 Wash. 590, 140 Pac. 677; *In re Murphy's Estate,* 98 Wash. 548, 168 Pac. 175. The evidence in the case now before us is less persuasive in sustaining the charge of undue influence than was the evidence offered in the case of *Parr v. Campbell,* 109 Wash. 376, 186 Pac. 858, where it was held that the charge was not sustained.

Smith Duty did not testify, and from this it is argued that there should be a finding against him. His failure to go upon the stand and testify is a circumstance which it is proper to weigh and consider. Giving this circumstance such weight as it is entitled to, it yet cannot be held under the evidence that the will as executed was the result of undue influence. It is an established fact in the record that the brother and sister were not upon friendly terms and had not been for a number of years. The fact that the brother did not go upon the stand and detail the differences between himself and his sister should not be regarded as a controlling circumstance.

The judgment will be affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and MOUNT, JJ., concur.