[No. 20028.  Department Two.  January 6, 1927.]

*In the Matter of the Estate of* JOHN PETERSON, *Deceased.*

HENRY R. PETERSON *et al., Appellants,* v. FRED H. WITT *et al., Respondents.*[1]

[1] WILLS (7)—TESTAMENTARY CAPACITY—EVIDENCE — SUFFICIENCY. A finding of mental capacity to make a will is sustained where the testimony of all the persons present at its execution indicated competency and a clear knowledge of what the testator desired, notwithstanding other evidence, including that of a physician, tending to show that his mind was wandering at times.

[2] CHARITIES (3)—CERTAINTY AS TO BENEFICIARIES.  A bequest of all decedent's property "to the poor people of Spokane" is not so indefinite and uncertain as to the beneficiaries as to invalidate the will.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered September 15, 1925, upon findings in favor of the defendants, in an action to contest a will, tried to the court.  Affirmed.

[1]Reported in 252 Pac. 139.

*Lund & Dodds,* for appellants.

*Arthur L. Hooper* and *Williams & Cornelius,* for respondents.

Askren, J.—Two nephews of John Peterson, deceased, brought this action to contest a will made by him a few days before his death. From a judgment sustaining the will, the contestants have appealed.

[1] The first question raised is the mental capacity of the testator. The evidence shows that the decedent was a laborer who suffered from a chronic case of asthma; was unmarried, and had no relatives save two nephews, one in Minneapolis and one in Portland; that he had seen neither of these, nor had any communication with them, for some twenty years prior to 1923, at which time he visited one of them in Portland, and he in turn visited the decedent for a few hours early in 1924; that he accumulated approximately five thousand dollars in cash which he had on deposit in five different banks in Spokane; that he went to the Sacred Heart Hospital in Spokane a few days before his death; that when asked regarding his relatives shortly after entering, for the purpose of making a hospital record, he said that he did not want his relatives notified; that he did not want them to have anything. About ten o'clock of the night of May 21, four days before his death, he called one of the sisters and notified her that he wanted to give his money to the poor of Spokane. The sister thereupon took a piece of paper and wrote thereon as instructed. The document was handed to the night steward to read to him, and, after it was read aloud, he said it was all right and took a pen and signed it, and asked for witnesses. One witness having signed he said that another was required, and a nurse officiated in that capacity. The following day the trustee named therein, Fred H.

Witt, at that time police court judge of the city of Spokane, called upon him and discussed with him the contents of the will. Later, he told the trustee of the different banks in which his money was deposited.

The testimony of all of the persons who had anything to do with the execution of the will was to the effect that decedent's mind was perfectly normal in every way. The doctor who cared for him testified, however, that he had difficulty in getting his full attention to questions asked him, and "I would have to speak very strongly to direct his attention to the subject matter at hand". He concluded that the decedent's mind was wandering at times, and said that he didn't believe any man as sick as the decedent "is qualified and would know just what he was doing, definitely". A friend of decedent's, one Paul Ostholm, testified that he saw the decedent once after he went to the hospital, but that he was so sick that he stayed only a short time.

From the testimony we have detailed, it will be quite apparent that there was a conflict in the testimony as to the mental capacity of the decedent at the time of the execution of the will. Upon the one side is that of the physician who was not present at the execution, but who saw the decedent at different times and whose skill in such matters makes his testimony very valuable; while upon the other hand is the testimony of all the witnesses who were present at its execution, as well as one witness to whom he afterwards confirmed its contents. This presents a clear case for the decision of the trial court, whose judgment we will not set aside unless the evidence preponderates against it. A reading of the record indicates that the preponderance of the evidence fully sustains the holding of the trial court that the testator had that mental capacity required by law in one who makes a will.

[2] It is next claimed that the will is invalid because of the indefiniteness of the beneficiaries. It provides that the testator "wants his money given to the poor people of Spokane". It is said that the bequest to "the poor people of Spokane" is so indefinite and uncertain that neither the court nor the trustee can tell who were meant to be the objects of the testator's charity. This may be true in a limited sense, but it nevertheless does not invalidate the will. Bequests for charitable purposes are always upheld, if the donor sufficiently shows his intention to create a charity and indicates its general nature and purpose and describes in general terms the class of beneficiaries. The rule is well stated in 11 C. J. 344:

"Various gifts intended to ameliorate the condition of a particular class of the poor, sick, infirm, or other persons in unfortunate circumstances have been upheld as charitable, not only on account of their being for a charitable purpose, but also as being valid as against any objection as to beneficiaries, such as indefiniteness and uncertainty, or insufficient description of the class to be benefited, or because limited to a class, the most common illustration being that of a gift for the poor, of a particular parish, town, or other place or locality. In many cases gifts for the benefit of poor persons in general are held or declared to be valid."

An examination of the multitude of cases where such bequests have been the subject of inquiry but confirms our announcement in *In re Wilson's Estate*, 111 Wash. 491, 191 Pac. 615, where we said:

"Unquestionably courts, in the administration of these matters, look with kindliness upon legacies and devises made to the use of charity, and rather than allow benevolent intentions to prove abortive, go to the full length of their ability to fulfill them."

That a failure to be specific is one of the main features of a public charity is well recognized by

courts generally, and we approved this holding in *In re Stewart's Estate,* 26 Wash. 32, 66 Pac. 148, 67 Pac. 723, where we said:

"If the devise be for charitable uses, it is immaterial that the objects of the charity are uncertain and indefinite. Indeed it is said that vagueness is, in some respects, essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recipient begins."

See, also, *Peth v. Spear,* 63 Wash. 291, 115 Pac. 164. The judgment is affirmed.

TOLMAN, C. J., MAIN, BRIDGES and MACKINTOSH, JJ., concur.