HOLCOMB, J., dissents.
John L. Landgren was a resident of Spokane county for many years. He died May 3, 1935, after a lingering illness. At the time of his death, he was seventy-nine years of age, and had been failing for months and very ill since December, 1934. He suffered from high blood pressure, and had become weak and childish. *Page 34 
Mr. Landgren was of Swedish descent, and his only known relatives were four sisters and a niece residing in Sweden. About two years prior to his death, he made his will in favor of these relatives, at the same time giving Mr. Carl Swanson, his attorney, their addresses, so that they might be communicated with promptly upon emergency. Mr. Landgren owned a little home in the town of Hillyard, and when he became ill, engaged different persons to take care of him. He changed his attendants frequently, often accusing them unreasonably of neglect or even of theft.
Early in the winter of 1935, a neighbor suggested that Mr. Landgren enter Saint Joseph's home for the aged, at the same time suggesting that he might with propriety leave his property to this institution. This latter suggestion Mr. Landgren repudiated, saying that he had left his property to his relatives in Sweden, but February 21st he did enter the home. While an inmate, he was attended by Doctor C.M. Doland, who became familiar with the case.
After a few weeks, Mr. Landgren left the home, he having become dissatisfied and having accused some of the sisters who cared for him of having stolen articles of his property. After leaving Saint Joseph's, Mr. Landgren entered the Sacred Heart hospital, and shortly thereafter was sent to the psychopathic ward of Saint Luke's hospital, as a mental case for observation. A complaint having been filed, alleging that Mr. Landgren was mentally incompetent, he was, while at Saint Luke's, visited by the members of the insanity commission of Spokane county, Doctors O'Leary, Heitman and Lien. A hearing was had, Judge Fred H. Witt, of the superior court, presiding, with the result that the man was not committed.
After this hearing, Mr. Landgren, aided by Mr. Swanson, his attorney, went to the home of Petra *Page 35 
Nord, a widow of Swedish extraction, residing in Spokane. Mr. Landgren had been acquainted with Mrs. Nord's late husband, and had visited the home on several occasions. He went to Mrs. Nord's late in the month of March, and remained there until April 19th, when he was removed to the Deaconess hospital at Spokane, where he remained until his death. Three days before leaving Mrs. Nord's, he made a new will, bequeathing his property to Mrs. Nord. Mr. Swanson did not prepare this will, and in it the testator is named as "John Lundgren."
Shortly after Mr. Landgren's death, the will which Mr. Swanson had prepared was offered for probate and admitted. Three days later, the second will, in favor of Mrs. Nord, was filed, indexed under the name Lundgren, and regularly admitted to probate. Mrs. Nord, who was named executrix of the second will, learned of the existence of the first will when she demanded of the trust company named as executor thereof the assets of the estate. This demand was refused, and nothing more was done until, within six months of the probate of the second will, the beneficiaries named in the earlier will filed a contest.
The hearing upon this contest (the executor named in the first will having been made a party) resulted in an order establishing the second will, the trial court holding that there had been no undue influence, and that, at the time he made the same, Mr. Landgren enjoyed testamentary capacity. The court also held that the contest instituted by the beneficiaries of the first will brought both wills before the court, and that no question of resjudicata, as presented by the admission of the earlier will to probate, was present in the case. From the order establishing the second will, the contestants have appealed.
The errors assigned amount to an attack upon the *Page 36 
ruling of the trial court holding that Mr. Landgren made the second will, in favor of Petra Nord, free from undue influence, and that at the time he made the same he was mentally competent to dispose of his estate. Appellants also contend that the order admitting the older will to probate amounted to res judicata, and that the earlier will should for that reason be given effect.
As we are of the opinion that the evidence preponderates against the finding of the trial court upon the question of mental competency, no other question need be discussed.
Some time prior to his death, Mr. Landgren had suffered a paralytic stroke, from which he had to some extent recovered. He was, however, suffering from cerebral arteriosclerosis, a disease which affects the brain and renders the sufferer mentally unstable, suspicious and irritable. He was also suffering from cataract, and his vision was very greatly impaired. There is medical testimony in the record to the effect that an examination of Mr. Landgren's eyes disclosed a condition recognized by physicians as a symptom of high blood pressure in the brain. A recognized medical authority indicates that this condition may cause an altered personality, and that the patient may suffer from delusions and emotional instability. Other effects of the disease are also shown, symptoms of which were present in Mr. Landgren's case.
The record contains disinterested testimony to the effect that Mr. Landgren was always particular that he be given his correct name, and that this was not to him a matter of indifference. The record also indicates that Mr. Landgren had a strong family feeling, and that he recognized the ties of kinship existing between himself and his sisters.
From the latter part of the year 1934, he required *Page 37 
an attendant, as he was utterly unable to care for himself, and apparently entirely indifferent to the condition of his person. He was a problem case, and his attendants found it difficult to get along with him. He often, without the slightest warrant in fact, accused them of stealing his property. Doctor Doland, who attended Mr. Landgren while in Saint Joseph's home and in the Sacred Heart hospital, considering him a mental case and a sufferer from senile dementia, advised the filing of a complaint in an insanity proceeding. Senile dementia, as is well known, is incurable and progressive.
Doctor Doland and two members of the insanity commission who examined Mr. Landgren, together with Judge Witt, testified at the hearing before the court below. They explained that, because manifestly Mr. Landgren was not dangerous, and because his financial condition was good and he was able to pay for proper care and attention in a private institution, it was thought best not to send him to a state asylum for the insane. The three doctors and Judge Witt all testified that, in their opinion, Mr. Landgren, at the time they saw him, lacked testamentary capacity. In view of their testimony, the fact that the insanity commission failed to find that the patient should be sent to an insane asylum is of little consequence. He was not dangerous to be at large, and was being well cared for where he was.
Insanity and testamentary capacity are two entirely different things. A man may be insane and properly confined in an institution, and yet have lucid intervals during which he may enjoy testamentary capacity, and may make a will. On the other hand, a man may be entirely lacking in testamentary capacity, but for good reasons not be a proper subject for commitment to a state asylum. *Page 38 
In our opinion, the testimony of the three doctors and of Judge Witt shows beyond question that, at the time they saw Mr. Landgren, he was mentally incompetent to make a will, and it is impossible to imagine, and the evidence affords no basis for holding, that thereafter his condition appreciably improved. Mr. Carl Swanson, a lawyer of long experience, who was well acquainted with Mr. Landgren, and saw him often, several times during the month of April, 1935, testified positively that, in his opinion, Mr. Landgren, during the month of April, 1935, was not mentally competent to make a will.
As above stated, very shortly after the insanity hearing, Mr. Landgren was taken to the home of respondent, Petra Nord, where he remained approximately three weeks. Prior to this time, he had known Mrs. Nord only slightly. While she took good care of Mr. Landgren, the record contains nothing which discloses any reasonable basis for any such violent change in his long continued desire that his relatives have his property as is disclosed by the second will. Three days after making this will in respondent's favor, he was removed to a hospital, where he died.
All of the testimony indicates that for a long time prior to the execution of the second will, Mr. Landgren was a very sick old man, senile, almost blind, his mind progressively weakening, with little or no control over his physical processes, his memory failing, and his whole being suffering rapid disintegration.
In considering testamentary capacity at any particular date, it is proper to consider the previously expressed wish of the alleged testator. If he has on previous occasions expressed a settled purpose concerning the testamentary disposition which he desires to make of his property, such statements are entitled to consideration. Roe v. Duty, 115 Wn. 313, 197 P. 47 *Page 39 
. It clearly appears from the evidence that Mr. Landgren had for some time maintained a fixed desire that his sisters enjoy his property.
His attorney testified that, after making the first will, Mr. Landgren had several times referred thereto, and that, even while Mr. Landgren was living at respondent's home, he on one occasion came to the attorney's office with one of respondent's sons, and, leaving the latter in the reception room, came into the attorney's private office, closing the door after him, on which occasion he asked the witness if he thought it would be possible to enter a Swedish home. On being told that he should make the attempt, he then said: "The papers, you have all the papers and the will and all of those things?" continuing, after being assured that the papers were in the attorney's possession, by asking if the attorney had his sisters' addresses. On being informed that these were with the will, he said: "That is all right."
The trial court apparently was of the opinion that Mr. Landgren was thoroughly contented at respondent's home, but from the testimony above referred to, it appears that, even while there, he proposed to seek admission to an institution.
Respondent's physician, who saw Mr. Landgren during the month of April, 1935, while making a professional call upon respondent at her home, testified that, in his opinion, Mr. Landgren was mentally competent. We find no reason for doubting the professional ability of this witness or his sincerity in testifying, but the testimony of three doctors who made a thorough examination of Mr. Landgren, one for the purpose of treating him, and the other two for the purpose of determining his mental condition, together with the testimony of Judge Witt, tells a far more convincing story. *Page 40 
Respondent argues that appellants failed to produce testimony concerning Mr. Landgren's mental condition between the latter part of March and April 16th, the date of the second will. It is also argued that the report of the medical men composing the insanity commission shows that Mr. Landgren was "well oriented," and only physically weak. At the trial, one of the physicians who examined Mr. Landgren testified that, in his opinion, at the time of the insanity hearing Mr. Landgren was insane, though not dangerous. Mr. Swanson testified, as above stated, that, during the month of April, Mr. Landgren lacked testamentary capacity, and his testimony is convincing and entitled to great consideration. Mrs. Nord and five of her children testified that Mr. Landgren was mentally competent while at Mrs. Nord's home. Other witnesses called by respondent testified to the same effect. The testimony introduced by respondent, however, is wholly insufficient to overcome the convincing testimony introduced by appellants.
[1] It is seldom that testimony concerning mental competency is all one way. Considering all the evidence pertinent to this issue, Mr. Landgren's background, his wishes as expressed in the first will and later concerning the same, his illness, his mental and physical weakness, the fact that he was nearly blind and his consequent dependency, the nature of the disease from which he was suffering and its effects, as testified to by the doctors and as shown by the witnesses who testified as to Mr. Landgren's condition, we are convinced that the record preponderates against the finding of the trial court to the effect that, at the time he made the second will, Mr. Landgren was mentally competent to perform such an act.
The order appealed from is reversed, with instructions *Page 41 
to sustain appellants' contest against the will of April 16th.
MILLARD, C.J., TOLMAN, MAIN, MITCHELL, STEINERT, GERAGHTY, and BLAKE, JJ., concur.